United States District Court
Southern District of Texas
**ENTERED**
September 04, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHELE G.,[1] § § *Plaintiff*, § § v. § § KILOLO KIJAKAZI,[2] § Acting Commissioner of Social § Security, § § *Defendant*. § | Case No. 4:20-cv-00640 |

# MEMORANDUM AND ORDER
# ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Michele G. ("Plaintiff") filed this suit seeking judicial review of the denial of disability and disability insurance benefits ("DBI") under Title II of the Social Security Act ("the Act"), as well as review of the denial of supplemental security income ("SSI") under Title XVI of the Act. ECF No. 1.[3] The Parties filed cross-motions for summary judgment. ECF Nos. 10, 12. Based on the briefing and the record, the Court determines that Plaintiff's motion for summary judgment

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

[3] On April 24, 2020, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 7.

should be granted and Defendant's motion for summary judgment should be denied.

**I.    BACKGROUND**

Plaintiff is a 53-year-old woman. R. 19, 239, 241.[4] Plaintiff has a G.E.D. R. 19, 31. Plaintiff worked as an account representative for a bank, at an employment agency, as a lead teller at a bank, and other temp jobs. R. 31–32. Plaintiff has not returned to work since at least the alleged disability onset date of November 2, 2017, nor has she attempted to work any other job. R. 12, 31, 36.

On March 23, 2018, Plaintiff filed her application for DBI and SSI under Titles II and XVI of the Act. R. 12–13, 239–49. Plaintiff based[5] her application on bipolar disorder, post-traumatic stress disorder ("PTSD"), thyroid disorder, depression, and osteoarthritis (knee, wrist, and arm problems). R. 12, 49–50, 60–61, 341–43, 1754–55. Plaintiff believes that her conditions debilitated her beginning in 2017 after a manic attack leading to psychosis. R. 36. The Commissioner denied her claims initially and on reconsideration. R. 10, 59, 71, 89, 105.

Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 6, 2019. R. 42–48. After Plaintiff testified, the ALJ

---

[4] "R." citations refer to the electronically filed Administrative Record, ECF No. 9.

[5] The relevant time period is November 2, 2017—Plaintiff's alleged onset date—through December 31, 2022—Plaintiff's last insured date. R. 12. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

recessed the hearing and postponed it to obtain a medical expert to testify about Plaintiff's mental health conditions at the rescheduled hearing. R. 47–48. The hearing resumed on October 10, 2019. R. 28–41. An attorney represented Plaintiff at the hearing. R. 28. Plaintiff and a vocational expert testified at the hearing, but there was no medical expert. R. 29. The ALJ issued a decision denying Plaintiff's request for benefits. R. 7–27.[6] The Appeals Council denied Plaintiff's request for review. R. 1–6.

Plaintiff filed this case, ECF No. 1, challenging the ALJ's analysis and seeking remand. Pl.'s MSJ Brief, ECF No. 11 at 18–24. Defendant opposes Plaintiff's motion, arguing that the ALJ did not commit any reversible error and the

---

[6] An ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at step five. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 2, 2017, through her date last insured of December 31, 2022. R. 12. At step two, the ALJ found that Plaintiff has the following severe impairments: osteoarthritis, depression, bipolar disorder, and PTSD. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). R. 13. Between step three and step four, the ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except the claimant: can lift 20 pounds occasionally and 10 pounds frequently; stand/walk and sit six hours; cannot climb ladders, ropes, or scaffolds; the remainder of postural activity is limited to occasionally; manipulatively and bilaterally limited to frequently; limited to simple work, meaning 1, 2 and 3 step tasks; and no forced pace or assembly line work, production pace, tandem or teamwork, and occasional contact with co-workers, supervisors, and the public. R. 14. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 19. At step five, the ALJ concluded that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including marker, garment sorter, and classifier. R. 19–20. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 20.

3

ALJ's findings were proper and supported by substantial evidence. Def.'s MSJ Brief, ECF No. 13 at 2–7.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestekl*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial

evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Roeber v. Berryhill*, No. 17-CV-01931, 2018 WL 3745674, at *3 (S.D. Tex. Aug. 7, 2018) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). The ALJ, not the court, is to resolve any conflicts in the evidence. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

5

## III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff makes a single contention—that substantial evidence does not support the ALJ's RFC determination. ECF No. 11 at 1. Plaintiff argues that the ALJ did not properly develop the record on Plaintiff's mental limitations. ECF No. 11 at 24. Defendant contends the ALJ had no duty to develop the record further and substantial evidence supports his RFC determination. ECF No. 13 at 2, 5–7.

A claimant bears the burden of proving that he or she suffers from a disability. However, the mere presence of an impairment is not enough to establish that one is suffering from a disability. *Shipley v. Sec'y of HHS*, 812 F.2d 934, 935 (5th Cir. 1987). Rather, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 452). "The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Id.* Once the Commissioner makes that showing, the burden shifts back to the claimant to rebut the finding. *Id.* The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The RFC analysis is conducted between steps three and four, at which point a plaintiff maintains the burden to establish that her impairments result in significant limitations to her potential RFC. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The RFC is defined as "the most the claimant can still do despite his [or her] physical and mental limitations … based on all relevant evidence in the claimant's record." *Winston v. Berryhill*, 755 F. App'x 395, 399 (5th Cir. 2018) (citation omitted). The ALJ must make "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing 1996 WL 374184, *1 (S.S.A. 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* When making the RFC determination, the ALJ must consider all medical opinions contained in the record. 42 U.S.C. § 405(b)(1).

The ALJ found that Plaintiff has the RFC to perform light work. R. 14–19. The Social Security regulations define light work in § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7

20 C.F.R. § 404.1567(b).

The ALJ imposed further restrictions on the RFC: Plaintiff can lift 20 pounds occasionally and 10 pounds frequently; stand/walk and sit six hours; cannot climb ladders, ropes, or scaffolds; the remainder of postural activity is limited to occasionally; manipulatively and bilaterally limited to frequently; limited to simple work, meaning 1, 2 and 3 step tasks; and no forced pace or assembly line work, production pace, tandem or teamwork, and occasional contact with co-workers, supervisors, and the public. R. 14.

The ALJ's RFC determination is "granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the [ALJ's] decision or finds that the [ALJ] made an error of law." *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. 2011) (quoting Leggett *v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)). If the ALJ's RFC determination is supported by substantial evidence in the record, it may not be disturbed on appeal. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

An ALJ's decision lacks substantial evidence "if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced Plaintiff." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). The question of whether the ALJ fully and fairly developed the record depends on whether there was sufficient

evidence in the record for an informed decision. "As long as sufficient evidence does exist, the ALJ has no duty to request additional evidence." *Barnes v. Astrue*, No. H-07-4377, 2008 WL 5348225, at *9 (S.D. Tex. Dec. 22, 2008). Prejudice is demonstrated "by showing that Plaintiff 'could and would have adduced evidence that might have altered the result.'" *Torres v. Colvin*, No. 5:14-CV-34, 2015 WL 12571022, at *11 (S.D. Tex. Feb. 5, 2015) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). An error is harmless, however, if "[i]t is inconceivable that the ALJ would have reached a different conclusion" even had they developed the record further. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

Plaintiff argues that the ALJ committed harmful error by failing to secure the testimony of a medical expert when the hearing resumed on October 10, 2019. Plaintiff cites the ALJ's statements at the June 6, 2019 hearing about his desire to receive medical expert testimony:

> ALJ: Okay. You know, they list her problems as severe but they never sent her to -- you know, they sent her to a CE -- I mean her physical problems --
>
> ATTY: Right.
>
> ALJ: -- are minor. It's her psychiatric problems that are severe. Well, why don't we send her to a psychiatric examination?
>
> ATTY: Okay.
> ALJ: And we'll get a medical source --
>
> CLMT: I have a problem with that, sir. I don't have transportation.
>
> ALJ: Okay. Well, I guess -- I don't know what to do with that. I guess we could reset it and get --
>
> ATTY: An ME?

9

>ALJ: ME.
>
>ATTY: Okay.
>
>ALJ: All right. Let's do that. We'll continue the case. We'll reschedule it, and I'll get an ME.
>
>ATTY: Sounds good.
>
>ALJ: Okay. Ma'am, we're going to reschedule your case, and I'm going to get me a psychologist to tell me about your problems, all right?
>
>CLMT: Okay. Yes, sir.
>
>ALJ: All right. Thank you.

R. 47–48.

Plaintiff contends the ALJ erred because there was no medical expert at the next hearing. "[W]hether to consult a medical expert is generally a matter left to the discretion of the ALJ." *Galloway v. Astrue*, No. H-07-01646, 2008 WL 8053508, at *4 (S.D. Tex. May 23, 2008); *see, e.g.*, *Atkins v. Barnhart*, 119 F. App'x 672, 674 (5th Cir. 2005) ("[T]he regulations do not mandate that the ALJ ask for and consider opinions from medical experts . . . ."); *Haywood v. Sullivan*, 888 F.2d 1463, 1467 (5th Cir. 1989) ("An ALJ requests a [medical expert] to testify when she or he feels it necessary.); *Frank v. Barnhart*, 455 F. Supp. 2d 554, 558 (E.D. Tex. 2006) ("A medical expert's testimony is *required* only in very limited circumstances . . . . Otherwise, the decision whether to utilize a medical expert is discretionary.").[7]

---

[7] A medical expert is required, however, when an ALJ must determine whether a claimant's impairments are equivalent in severity to impairments in the Listings. SSR 96-6p, 1996 WL 374180 ("[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commission on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight [before deciding whether a listing is met or equaled].").

10

However, even where consulting a medical expert is discretionary, an ALJ is under an affirmative duty to develop the record fully, and where an ALJ's failure to do so results in prejudice to a claimant, remand is warranted. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

The record establishes that, after reviewing the medical evidence and eliciting some testimony from Plaintiff, the ALJ exercised his discretion to consult a medical expert and recessed the hearing for the express purpose of obtaining a medical expert to assist him with the evidence concerning Plaintiff's mental health issues. R. 47–48. The record also establishes that the ALJ failed to arrange for the assistance of a medical expert when the hearing resumed four months later. R. 28–29. This is not a case about whether the ALJ should have exercised his discretion to obtain a medical expert, as the ALJ exercised that discretion when he recessed the hearing. Instead, the question before the Court is whether the ALJ erred when he proceeded with the resumed hearing without the aid of a medical expert after he made the determination that he needed a medical expert. The ALJ's opinion makes no mention of the fact that he proceeded without a medical expert after he made the determination that it would be useful for him to have that assistance.

Defendant contends that substantial evidence supports the ALJ's decision because additional records were submitted for treatment Plaintiff received in the four months between the two hearings, showing improvement in Plaintiff's mental health

11

condition during that time. ECF No. 13 at 5-6 (citing R. 2056–2164, 2170–2249).[8] Defendant further contends that the ALJ considered these improvements, supporting his determination. *Id.* The ALJ found that these improvements over time show a trend that Plaintiff was improving, with minor setbacks in the form of de-compensation that were remedied with further treatment. R. 17, 2180.

The fallacy in this argument is that the Court has recognized that mental health symptoms fluctuate over time. *See Allen v. Saul*, No. 4:19-CV-1575, 2020 WL 5412630, at *8 (S.D. Tex. Sept. 9, 2020) (noting that mental health conditions often wax and wane over time); *Pena v. Saul*, No. 7:19-CV-0005, 2019 WL 8223588, at *23 (S.D. Tex. Dec. 26, 2019) ("[E]specially in the context of mental health issues, it is common for symptoms to wax and wane in the course of treatment"). Thus, there can be improvement or a leveling out of symptoms at times, but then times when symptoms are much worse. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better

---

[8] The records from the two doctor's visits reflect the following: As of July 9, 2019, Plaintiff looked well-groomed; had focused thought processes; focused associations; intact insight; no hallucinations, delusions, homicidal ideations, or suicidal ideations; intact orientation; intact language; average fund of knowledge; elevated mood; and appropriate affect. R. 2140–42. Plaintiff also had impaired memory, attention, and concentration. R. 2141. As of August 22, 2019, Plaintiff looked well-groomed; had focused and goal directed thought processes; withdrawal and paranoid associations; intact insight; good judgment; no hallucinations, delusions, homicidal ideations, or suicidal ideations; intact orientation; intact language; average fund of knowledge; elevated mood; and appropriate affect. R. 2200–02. Plaintiff also had intact memory, attention, and concentration. R. 2201.

12

. . . does not imply that the condition has been treated."); *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) ("PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation.") (quoting *Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995)). A mere four months of some improvement is insufficient to create a trend showing that Plaintiff can return to work. *See Garrison v. Colvin*, 759 F.3d 995, 1017–18 (9th Cir. 2014) (noting that "[c]ycles of improvement and debilitating symptoms are a common occurrence" with mental health illnesses and cautioning against inferring that improvement in symptoms necessarily means a plaintiff can function in a work environment, especially "when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work"). Since the ALJ had already determined that a medical expert was necessary, the four months of records were insufficient for the ALJ to proceed without the benefit of expert testimony.

Defendant contends that Plaintiff must show that the ALJ's failure to obtain the testimony of a medical expert caused her prejudice. ECF No. 13 at 6–7. The Court concludes that prejudice is established in the ALJ's decision to go forward without the benefit of evidence he previously determined that he needed. *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018) ("The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially

13

profound in a case involving a mental disability.") (quoting *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)). By not obtaining the testimony of a medical expert after determining that one was necessary, the ALJ failed to gather a fuller interpretation of Plaintiff's mental health issues. *See Garrison*, 759 F.3d at 1017 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms.").

## IV.   CONCLUSION

Therefore, the Court **GRANTS** Plaintiff's motion for summary judgment, ECF No. 10, and **DENIES** Defendant's motion for summary judgment, ECF No. 12. Commissioner's determination that Plaintiff is not disabled is **VACATED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**SIGNED** at Houston, Texas, on September 4, 2021.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**